Good morning. You may proceed. Good morning, Your Honor. My name is Patrick E. Brown and I represent the plaintiff appellant Zach Hillesheim in his appeal. Mr. Hillesheim raised two main issues on appeal today. Whether or not the district court's finding finding, the district court erred in finding Mr. Hillesheim lacked Article III standing with respect to his state law claim. And if the district court did not err with respect to his standing finding, whether the district court erred in dismissing Hillesheim's state law claim with prejudice. The relief sought by Mr. Hillesheim with respect to both issues is ultimately the same. Mr. Hillesheim is requesting that this court vacate the district court's judgment, reverse the district court's dismissal with prejudice, and remand to the district court with instructions to return this case to the Minnesota State Court for lack of federal jurisdiction. As held by this court in Wallace v. Conagra Foods, when it becomes clear a case originally filed in federal court does not belong there because the plaintiff lacks Article III standing, generally the appropriate remedy is to dismiss without prejudice. Further, as in the instance case, case which was removed to federal court by the defendant with respect to a case that was removed to federal court by the defendant, when it becomes clear to the court that the plaintiff lacks Article III standing, the federal court must remand the case to the state court from whence it came. To put it succinctly, although Mr. Hillesheim disagrees with the district court's taking up the issue of injury in fact as well as the conclusions reached by the district court in doing so, regardless of whether this court agrees with Mr. Hillesheim on the arguments regarding injury in fact, the outcome, dictator, remains the same. Remand of Mr. Hillesheim's state law claim to the state court. Counsel, I want to talk about the standing issue, which is really the predicate. I mean, I understand your argument, which is if there's no standing, it needs to be remanded to the state court is your basic argument. So no matter what, you should get another bite at the apple. I view you as, view your client as raising three claims, and I want to be sure this is right. They're all MHRA claims, and they were ADA claims, but a claim about the vertical signage, that there wasn't adequate vertical signage at the Holiday Station store, there wasn't an adequate access aisle on one of the two disabled parking spots, and then the trash can at the top of the ramp. Is that all inclusive, or is that all inclusive of the claims? That is correct with respect to the barriers that were alleged to give rise to my client's standing. With respect, where we draw issue with the district court's findings with respect to what has been mooted and whether or not there was an injury in fact, comes down primarily to the issue of where the trash can was placed, and what the placement of that trash can in the accessible route, what resulted from that. Okay, now I want to get to that one in a second, but the vertical signage and the access aisle, I don't know that there's an injury in fact on either one of those, because you haven't, there's no allegations that your client was unable to find a parking spot, or that in the disabled parking spot, there's no allegations of that nature for the vertical signage. Is that fair? With respect, particularly to the ADA claim, there's not a requirement that the deviations from the standards cause my client not to be able to get inside for example, or not be able to find the parking space on the particular day that he went there, because a violation of those standards is a violation of his dignitary interests. But he wasn't personally injured those days by, there's no allegation that he was personally injured, correct? There's no allegation that he was unable to find that parking space. Okay, and then on the access aisle, there was a second space that had an adequate access aisle, correct? And so you may make the same sort of dignitary, but he wasn't actually harmed because he had to park in a space without an adequate access aisle. My client didn't actually park because of the trash can, but you are correct, because he knew that if he was to park in an attempt to go inside, he wouldn't make it. Looking at the whole picture of the location, when he went there, it would have been futile for him to bother to park, even if he could have used that access aisle, because he wasn't going to be able to get from that access aisle to the interior. I see. So then the claim becomes really, I mean the claim of injury really becomes the trash can, which I just saw where you were headed, and I interrupted you. I just wanted to figure out what was before us and where the claim of injury came from. So I'll let you proceed and make that argument. Especially with respect to that major injury claim, what we're talking about when we're talking about the injury in fact is the fact that the curb ramp at this location is what is called a diagonal curb ramp. So it is on the corner of the sidewalk, and it goes up at an angle so that when you get to the top, there's supposed to be a landing that's clear that is clear for at least 36 inches past the top of the ramp, and for the width of the ramp's width itself. And the purpose of that landing is so that my client can go up the portion of the ramp that doesn't have cross slope or is not supposed to have cross slope, get to the top, and make a turn without the possibility of wobbling or tipping over because of cross slope. And the problem that Mr. Hilsheim had on the day that he went is that clear landing space had a garbage can placed right up there so that if my client was to attempt to go up the portion of the ramp that is intended for use by a person with a wheelchair or someone else to traverse and not the ramp flares, he'd run into the garbage can and not be able to turn without going onto the ramp flares. Alternatively, his alternative option, which appears to be what the district court judge decided that Mr. Hilsheim should have attempted, was to go up the curb ramp flare. And the problem with that, particularly on an angled ramp such as this, is that generally speaking, an accessible route is supposed to have no cross slope or cross slope less than 1 to 48, which is a very minimal amount of cross slope. But because he's going up the curb ramp flares, which are sloped towards the ramp run, there's a significant amount of cross slope, which would mean that my client's wheelchairs, the two wheels, would be at different levels as he attempted to go up onto the sidewalk. And that makes it very... You say cross slope. Are you talking about an uneven slope? Where the slopes join? Is that what you're talking about? So if this is the ramp, if it goes like this, this is the run slope, and the cross slope would be angled like this. It's a different angle. Yes, it's a different angle. Because the ramp run was on an angle to the corner... He knew it wasn't safe. He was drawing on his experience. That's correct. Why did the district court reject that? I don't think that that was appropriate. I think that especially since we are at the summary judgment stage where all inferences are supposed to be taken in favor of my client, that it was inappropriate for the district court to ignore Mr. Hilsheim's statements and say that in his opinion, Mr. Hilsheim couldn't have gone up that ramp. Didn't the district court also hold that your client could have gotten around a garbage can? Yes, again, the district court was putting his interpretation of what was in the photograph above what Mr. Hilsheim said. And your client said he couldn't. Isn't that correct? There's a question of fact there. Yes, which is why it was inappropriate on summary judgment for the district court to find against my client on that issue. Because it was an issue of fact. Whether or not Mr. Hilsheim would ultimately win at trial is a different issue, obviously. But when it comes time when we're making a determination on summary judgment... I'm sorry. Did the district court characterize that holding as a lack of standing on the part of your client? Yes, Your Honor. I wonder, wouldn't it be more appropriate? I understand you don't like the finding one way or the other and you don't really care what you call it. Or you might in the end. But wouldn't it be more appropriate to call that a holding that there's no claim? That is not a lack of standing, but there's just no claim, no cause of action. So I am completely... And I'm completely blanking on the case name and when I come back up... I'm completely blanking on a case name right now, but I'll try to remember it, look it up before I get back up here. But there's been a holding that when bringing an argument such as lack of injury in fact at the summary judgment stage, because of the fact that it is summary judgment, again, the court cannot weigh the facts and it has to be the inferences most favorable to my client must be taken. I understand. Just to follow up on Judge Arnold's question, the injury here or the injury in fact was the fact that you pleaded that he looked at the situation and said, I want to go in this holiday store, but I can't get my wheelchair around it safely. And that would be what would at least create a genuine issue of material fact on that. That's correct. But then you get to the next point, which is what Judge Arnold was getting at, which is the merits and whether there was actually claim. And I have a slightly different question, which is it's unclear from the record whether or not what was actually before the district court and before us was the merits of the claim itself. In other words, did Holiday consistently argue that even with respect to the trash can, there's no claim because there are inadequate facts to create a genuine issue of material fact as to whether there's an ADA or an MHRA violation. I believe what Holiday argued was that they had to the extent that there was a claim that they had mooted the claim because they are making an allegation, which is why they asserted that they, for example, with respect to the ADA claim that they had permanently removed the garbage can from the top of the ramp run. And that's something that my client did not dispute. I guess what I'm getting at is the cause of injury is relevant both to the question of whether there's a claim and also to the question of whether there's standing and to characterize every lack of a claim that is based on there being no injury as a lack of standing is simply not right. It strikes me as being an analytical difficulty here, but we'll work it through. Okay. It seems to be the custom in these kinds of cases. Just to follow up, your view is that the merits itself, whether it's the injury component, the merits determination or whether or not you've pled enough for an ADA or an MHRA claim, MHRA claim is not before us now. What's before us now is standing. I'm going to ask opposing counsel the exact same question. My client's fundamental position is that the district court judge should not have gotten to these questions that we're grappling with today with respect to the MHRA claim because it should have been remanded to the state court. We disagree with his findings, but if you were to find that his findings were correct, the case still needs to be remanded to state court. I'll reserve the remainder of my time. Isn't that a matter of discretion on the part of the district court? It is not. Under 28 U.S.C. 1447, if the court finds that, as he did here, that my client lacks standing, then he has no choice but to remand to state court because it was removed from there. I think that's what you're talking about. If the court discovers that it never had jurisdiction. There are lots of cases where this kind of thing happens. Although that statute, if read literally, does in fact support your point of view, I don't think that's been the way it's been applied. Well, the actual language of... I've been a judge for six years and have some experience with it. Because this was removed from state court, the 28 U.S.C. 1447 says if at any time before final judgment it appears that the district court lacks subject matter jurisdiction, it shall be remanded. That's not been the practice under the statute in my experience. Because the statute I think has been interpreted to mean if it appears at any time that the court never had jurisdiction, not if it loses. The question of removability has to do with jurisdiction at the time of the removal, as I understand it. So what has been created by the positions that Holiday has taken here is a situation where they originally asserted that there was jurisdiction on the federal case. I agree with your... Just looking at the statute, you're absolutely right. But my suggestion is different. But we'll work this out. I don't want to take your time. But what I was saying is where they made an assertion that there was standing on the federal level, only to turn around and say, just kidding, you never had there was no standing. There was an intervening event. They fixed it. And that's what caused the lack of standing. But they also argued with respect to the MHRA that there was no standing in the first place because there's no injury of fact. But it doesn't have to be standing on the MHRA for it to be removable. It's a federal claim. The MHRA, the Minnesota Human Rights Act is not a federal claim. It's a state claim. That includes not just, at the time I included, not just injunctive relief, but it also includes damages. Thank you. Good morning, Ms. Novotny. You may proceed. Thank you. May it please the court, counsel, my name is Tamara Novotny and I represent Holiday Station Stores. I want to pick up on some of the questions asked by Judge Strass towards the end of the last argument. Holiday's motion to the underlying court essentially asked the district court to dismiss with respect to the Minnesota Human Rights Act claim both because there was no injury in fact as well as because there was no legal basis for allowing that claim to proceed. So when Judge Arnold, when you said the injury in fact kind of goes to the merits as well as to the standing issue, I agree. And we were kind of addressing both before the district court. Ultimately, what the court As I read the opinion though, and I'll reread it obviously, but it seemed to me the court was really aiming at the question of whether there's a claim. And I agree with you. And then it just sort of veered off into the standing holding as a kind of well, you see my point. No, I do. I think the court talks about standing and he talks about the injury in fact, for example. But ultimately what the court was getting to and what he was ultimately determining was are there facts here? Is there evidence here that allows this case to go forward to the trial stage? We've already talked about the fact that there really isn't any dispute that Mr. Hilsheim could have parked in one of the handicapped parking spaces. There was an extra one there. He could have used the adjacent access aisle to get out of his vehicle. And there's nothing in the record to suggest that that parking space or that access aisle were being used. They were fully available for him to park in and to get out of his vehicle. Where there was the issue, including on appeal, is this argument over the garbage can and where it was located. The district court did not as I read its finding one way or the other as to whether that garbage can was properly located or not. What the court found was there wasn't sufficient evidence presented of any sort of violation under the ADA guidelines. If you've ever looked at the ADA guidelines, they're what really sets in painstaking detail and specificity what the requirements are. What makes a space compliant versus not compliant. Here's a little bit of a curveball question, but I got stuck on this. The MHRA, which seems to incorporate some of the ADA requirements at least in some of the cases, doesn't include any of those guidelines. There's no guidelines attached to the MHRA that says you have to have a width of an aisle of 36 inches or you can't have too much slope. Are the requirements the same? And if so, what's the authority for that? How do we then look to the ADA and say, okay, this was or was not met under the ADA when we're talking about a separate statute? I agree with you. The Minnesota Human Rights Act does not, anywhere that I'm aware of, expressly incorporate those guidelines. But it seems there is nothing else that provides any sort of guidance. It seems that the courts, as well as attorneys litigating these cases, often will look to those same guidelines. Often you're going to have these ADA and these MHRA cases together, and obviously if you need to meet the requirement of the ADA, you're going to look to those guidelines. So it seems that the courts have kind of said, well, this is the gospel that we're going to follow. Even if we assume that that is all correct and that's where we need to look, the issue for the district court and this court as well is the lack of any evidence that those very specific guidelines were not met. Again, the difference between compliance and non-compliance can be a matter of inches or even less than an inch. And it's not a matter of just, gee, this doesn't look right or it doesn't feel right. We've cited, for example, in our brief the Duran v. 7-11 case we just talked about in Kalani v. Avenue Grill, where it was kind of a similar allegation, where this bench doesn't feel right or I don't think this table is quite right. But the courts have said you have to have some specific information to establish a violation. Go to the trash can and he drives up and he says, as opposing counsel says, and I think this is undisputed, I can't get up there. I just think it's too dangerous. I could tip over. At least that's the allegations. And that's probably enough for standing as our discussion because he was deterred from going into the holiday station store. But then when you get to the merits of the claim, why isn't it enough? Why doesn't it create a genuine issue of material fact for him to look at that and say, in my experience, I don't think I can get up that safely because I don't think that it complies with the ADA. I think there's three things. First of all, this is not a situation where I think it was an obvious deterrent. There are those cases, of course, where a wheelchair user comes to a doorway and there's six or seven inches steps that are clearly going to preclude their ability to get into a building or into a facility. There isn't that obviousness here. With regard to Mr. Hilsheim based on his experience, and they talk about that a little bit in their brief, and they direct the court to, I believe it's a strong case out of California, the issue is Mr. Hilsheim did not present that kind of evidence to the district court. There's nothing in his declaration that says, for example, that based on my years of experience, I have encountered several sidewalks with obstacles on them, and that I am able to eyeball and determine whether there's 36 inches of space versus 35 inches of space. One would be compliant and one would not be compliant. In the strong case, there was that background, that information submitted to the court by the plaintiff to say, for example, in that case, he said based on my experience, I had encountered, I don't remember what the particular obstacle was, but with a slope, I believe, that he had encountered many times slopes that he believed that were not compliant, and that he in turn had taken it on himself to go out and actually measure those slopes, and he was able to verify that in fact, they weren't compliant. There's nothing in the record here that the district court had, or this court had, where Mr. Hilsheim said, for example, I've encountered these obstacles, I've encountered these diagonal slopes, that I have measured them, and based on these several instances and these experiences, I can tell whether or not they're in compliance. There just wasn't that evidence submitted to the court. And our motion was brought, it's a motion for summary judgment, not just a motion on the pleadings, meaning you need to come back with some real specific evidence. Our motion was also brought at the conclusion of discovery. So there's no, if you don't have that specific information at the time of our motion, you didn't have it for the time of trial. And certainly there was nothing submitted to the court that actually said what any measurements were. Again, under the guidelines, you'd have to have at least 36 inches of clear landing space for a person to maneuver their wheelchair. And what were his allegations in that respect? Anything? He just said that there was impermissibly narrow. Well, let me just follow up, which is how does he do that? You have a movable object, and we can get into whether this is an architectural barrier or not. I have some doubt about whether architectural is a trash can or not. But nevertheless, let's assume it is. It could be in a different spot the next day. It could be in a different spot the day after that. And so aren't you really asking a guy in a wheelchair to roll up the ramp with a ruler or measuring tape and try to measure the distance between to see if there's 36 inches of available space? Is that really what we want to encourage in order to make out a claim? Well, I would agree that at the pleading stage, asserting that the slope is excessive or perhaps asserting that there was an impermissibly narrow width for him to maneuver, that gets them past the pleadings. And we didn't bring a Rule 12 motion for that reason because I would agree that we would get shot down if we tried to do that. But we're past discovery and we're now determining are we going to trial or are we not going to trial? I know with counsel and other cases, there have been site inspections, for example, where they have taken many, many, many measurements to try and figure out exactly what the slope is and does it meet the requirements. And this garbage... Let's give a little of his personal history in his declaration in addition to saying that there was an excessive cross slope. You don't think that those two things together raise an inference that he knows what he's talking about? I think it's vastly different. You know... It would be better, no doubt, but I mean the question here is whether it's enough. Well, again, the requirement, the difference between Holiday being in compliance and not being... Sorry, the difference? The difference between Holiday's story being in compliance and not in compliance is literally a matter of inches or less. Right. So for Mr. Hilsheim to say that he could just eyeball what this slope was and in fact I think you're going to get to hear from us again after this on our next case. Counsel acknowledges in that brief when talking about a slope and in both situations it's supposed to be 1 to 48. And counsel says it's beyond the human eye's ability to determine whether you have a 1 to 47 or a 1 to 48. Yet we're supposed to believe that Mr. Hilsheim has that unbelievable capability to just look at a 1 to 48 slope. Or that he could look at and determine from his car no less that he had not even parked into the spot that he could determine whether this was 36 inches or 35 and 3 quarters. And that's the difference between compliance and not compliance, between having a claim and not having a claim. Why... You mentioned the next case and we'll leave the next case for the next case, but why didn't this case, why didn't Halliday raise the affirmative defense, we fixed it? Because the record seems under the MHRA, the record seems to suggest that the trash can's no longer in the same place, which means that it was fixed. And I'm just wondering why, if it did get raised, I wonder if that's an alternative basis for affirmance or... I'm just trying to figure out where that is in this case. Are you referring to the affirmative defense under the MHRA? Correct. The one that says if you remediated it's a defense to the claim. Quite simply the statute wasn't enacted yet. I see. So, we would have loved to, but we didn't have that option. I understand. We were able to raise the mootness argument on the ADA claim, but we didn't have that option in this case. With respect to the jurisdictional issue, I guess I would just echo what Judge Arnold has already said, and that is simply, we don't see that 1447 applies here at all. You know, that generally is going to apply, you know, if the removal was procedurally improper or if the court never had subject matter jurisdiction to begin with. And clearly, in this case, and there's no dispute, there never has been any dispute. You can even look at Hilsheim's own jurisdictional statement to this court acknowledging that the district court had supplemental jurisdiction under 1367. Am I right that when the case was removed it hadn't been mooted? That is, the violations hadn't been fixed? Correct. So that's what... Right. The case was sued out. It was removed, obviously, you know, soon thereafter, and the repairs were made after that. That's what I thought. You know, and I believe that the cases that counsel has cited, you know, they are distinguishable. The Hughes case, for example, I think says just what we have talked about. In that case, two of the plaintiffs never had standing to begin with because one had never been served with the speeding violation that was at issue and the other one, it was his wife that had been served. Here there's no question that Mr. Hilsheim at least, you know, went to the store and encountered what these conditions are. But again, the court's decision, it's not just standing, it's also going to the merits and whether there's sufficient evidence to allow this particular case to go forward to a trial and to allow Mr. Hilsheim to potentially request damages, and you know, he bears the burden of proving that there was a violation and there simply wasn't that evidence in the court's record. With respect to Mr. Hilsheim's declaration and I'm not acknowledging that he's got this disability and he very well may, based on his years of experience, be able to tell to some extent whether there's a violation or not, but what he actually submitted to the record for the court's consideration differs, and if you look at the Strong case that they do cite in support of that argument, there was a lot more there. Again, that particular plaintiff not only just, based on his experience, encountered violations, but he took the next step of actually going and measuring to determine whether, you know, when I feel like this is off, is it really off? Is it really a violation? And he had done that work, and there isn't that information in it. Let me see if I understand your point and it's not that, essentially, it's not that these statutes forbid dangerous kinds of conditions, it's that they forbid certain kinds of conditions that they deem to be dangerous. In other words, part of the claim has to be the actual violation and not just some sort of vague hazard. Is that it? Absolutely. That's why the declaration is insufficient. Right. The guidelines are, I mean, if you read the guidelines, like I said, they are in painstaking detail in what they're saying. They're saying, you know, you need X amount of inches, and there are certain exceptions, and you need this slope, and for this circumstance, you need, you know, like in this case, it has to be 36 inches. I have your point. And it's very explicit and it's very express. Just someone saying, I'm sure Mr. Hilsheim, you know, the more space the better for any wheelchair user. You know, a completely flat surface would certainly be more ideal than having to face any ramp, but it's not what his own personal comfort level is. It's a statutory requirement, and it's the statute and the guidelines set out what is acceptable, you know, where you have a claim, and over here you don't have a claim at all. So we would request that the court's order be affirmed in its entirety. Thank you, Your Honor. With respect to the incorporation of the ADA, with respect to the MHRA, the 8th Circuit in 2003 in Fenney v. Dakota, Minnesota and Eastern Company, which is 377 F. 3rd 707 at footnote number 5, indicated that the MHRA parallels the ADA. With respect to the use of 1447 at this stage of litigation, both the Wallace v. ConAgra case cited in my client's briefing, as well as a case cited in that one Constitution Party v. South Dakota, which is 639 F. 3rd 417 from 2011. And in that case, it was at the summary judgment stage that it was determined that there was no standing, and the court found that it had to be remanded. Counsel, I want to just ask you about the merits question, which is that the argument is look, these are very specific requirements, and there's always the possibility that your client is overly cautious. Perhaps he sees a trash can and says, I don't really want to take the chance here. Or maybe he has a larger wheelchair. I mean, I don't know. I can think of 20 different situations where that could happen. Opposing counsel come back and said, you didn't give anything specific that shows that any of these specific requirements were violated. Where is the genuine issue of material fact on the trash can? There's two things. One are the statements that he made, and the second is a photograph of what the location looked like when he was there. My client and just looking at the photograph, you can tell that the trash can is very close to the top. This isn't a situation where visually for him, it wasn't clear that it was 36 inches or it might be 35 and a half. It was very clear to him and it's clear from the photograph that there's less than 3 feet at the top of that ramp. It is very, very clear based on the photograph and his experience that, and also based on the regulations, that the cross slope, if he was to go up the ramp flare, is nowhere near 1 to 47. This is not a situation where my client is trying to determine between if it's 1 to 47 or 1 to 48 where you might need a ramp flare to the ramp run, which is what he needed to go. He would have had to go up. It needs to be 1 to 12 or less. So the cross slope for the proposed path of travel by the district court would have been, if it was a compliant ramp flare, would have been 1 to 12. Is there evidence on that? Is there a declaration from an expert? Is there some sort of measurement that says it's not? No, but I'm saying if we take, if we assume that they have a the garbage can at the top, that ramp flare has to be, have a slope of less than 1 to 12 and because it's a ramp flare, it's going to be close to that. And so this isn't, this is not a situation where like the next case where it's going to be, we're looking at really close together things. This is a situation where there is a significant amount of slope because there's ramp flares in a small amount of space. I guess you're answering the question. Yes. Your time has long expired. Yes, thank you, Your Honor. Where, because there are flares that are angling towards the ramp run, there's going to be, inherent in a ramp flare, is significant slope greater than 1 to 48. There would be no, you just don't have ramp flares like that, that would be anywhere near 1 to 48. I was able to tell from his experience that the cross slope on that, and it shows in the picture that the cross slope, if you were to go up the ramp flare, is vastly out of compliance for an accessible route. Thank you, Your Honors. Case is submitted.